UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 1:17-cr-00053-DAD-BAM |
|---|---|
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A) |
| JACK MOOTZ, | |
| Defendant. | (Doc. No. 56) |

Pending before the court is defendant Jack Mootz's motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is based in part on the purported risks posed to defendant Mootz by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On March 9, 2017, defendant Mootz was indicted on one count of receipt and distribution of material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2). (Doc. No. 1.) On May 31, 2017, defendant entered a plea of guilty to that charge, which carried it a maximum penalty of a minimum mandatory five-year term of imprisonment up to twenty years in prison. (Doc. Nos. 21, 25 at 1.) On August 23, 2017, the court sentenced defendant Mootz to 108 months in the custody of the U.S. Bureau of Prisons ("BOP"), to be followed by a 180-month term of supervised release. (Doc. Nos. 28, 38, 39.) The court also ordered defendant to pay

1

special assessments in the amount of $100.00 and $8,000.00 in restitution to the victims of his offense. (Doc. Nos. 39, 44.) Defendant is now serving his sentence at Federal Correctional Institution, Lompoc ("FCI Lompoc"). (*See* Doc. No. 56 at 8.) As of the date of this order, defendant Mootz has served approximately 41 months of his 108-month prison sentence. (*Id.* at 9.)

On June 2, 2020, defendant filed the pending motion. (Doc. No. 56.) On June 12, 2020, the government filed its opposition to the motion, and on June 17, 2020, defendant filed his reply thereto. (Doc. Nos. 58, 61.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 3:13-cr-00444-BR, 2020 WL 1673440, at *2 (D. Or. April 6, 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

2

>conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
>(i) extraordinary and compelling reasons warrant such a reduction; or
>
>(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

3

compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, 2:98-cr-00749-CAS, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a

---

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

4

>   district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

### A.     Administrative Exhaustion

Defendant Mootz represents that on April 8, 2020, he submitted a request for compassionate release to the acting warden of FCI Lompoc. (Doc. No. 56 at 9) (citing Doc. No. 52). On or about May 14, 2020, defendant Mootz received a letter from the acting warden dated May 4, 2020 denying his request. (*Id.*) (citing Doc. No. 49). In its opposition to the pending motion, the government states that defendant Mootz did not appeal the acting warden's denial of his request for compassionate release. (Doc. No. 58 at 5.) Defendant did not address this contention in his reply, nor has he presented and evidence or argument suggesting that he pursued an administrative appeal from the warden's denial of his request to the BOP's Regional Director as required under 28 C.F.R. § 542.15(a). *See* note 1, above. Thus, it appears that defendant Mootz has failed to exhaust his administrative remedies and that his motion is subject to denial on that ground alone.

Defendant has not requested that he be excused from complying with § 3582(c)(1)(A)'s administrative exhaustion requirement. Nonetheless, the court declines to decide whether a failure to satisfy that requirement can be excused and, if so, under what circumstances. *See, e.g.*, *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858 (N.D. Cal. May 8, 2020) (finding that administrative exhaustion under § 3582(c)(1)(A) can be excused); *United States v. Meron*, No. 2:18-cr-0209-KJM, 2020 WL 1873900 (E.D. Cal. Apr. 15, 2020) (holding that the exhaustion requirement is jurisdictional and cannot be excused under any circumstances). Rather,

5

for the reasons explained below, the court finds that defendant Mootz has not established that extraordinary and compelling reasons warrant his compassionate release. The court also concludes that the requested reduction in defendant's sentence would be inconsistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a). Accordingly, defendant Mootz's motion will be denied.

**B.      Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,

/////

6

> that substantially diminishes the ability of the defendant to provide
> self-care within the environment of a correctional facility and from
> which he or she is not expected to recover.

*Id.* at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 2020 WL 2572525, at *9–10 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B). This provision, however, does not apply here because, as noted above, defendant Mootz has now served approximately only 41 months of his 108-month prison sentence.

Defendant Mootz argues that extraordinary and compelling reasons warranting his compassionate release exist because he is 66 years old and suffers from hypertension, hyperglycemia, and high cholesterol. (Doc. Nos. 56 at 15; 63 at 8, 9 ,14.) To treat his hypertension and high cholesterol, defendant has been prescribed a number of medications. (Doc. No. 56 at 16.) Additionally, defendant argues that because his body mass index is 30.6, he suffers from obesity. (*Id.* at 15; Doc. No. 63 at 13.) He also contends that he is vulnerable to becoming severely ill were he to contract COVID-19 because he is at a 20.9 percent risk of suffering heart

7

1    disease and/or stroke within the next ten years, and that "COVID-19 kills far more men than it
2    does women." (Doc. No. 56 at 15–16.) Defendant avers that he is not expected to recover from
3    these medical conditions. (*Id.* at 24.) His medical records reflect that his hypertension is "poorly
4    controlled," even with medication, and defendant claims that he cannot treat his obesity because
5    the prison at which he is confined does not provide nutritious food and he cannot leave his unit to
6    exercise. (*Id.*; Doc. No. 63 at 2.) Moreover, defendant reports that he tested positive for COVID-
7    19 on May 26, 2020, although he appears to have been asymptomatic. (Doc. No. 56 at 17, 19;
8    Doc. No. 63 at 4, 6.)

9    In support of his motion, defendant has filed the declaration of his counsel, Assistant
10   Federal Defender ("AFD") Jaya C. Gupta, dated May 29, 2020. (Doc. No. 49-2.) Therein, AFD
11   Gupta states that defendant Mootz has reported the following: he is housed in an open-plan
12   dormitory filled with bunk beds spaced approximately two to three feet apart and without a
13   partition (*id.* at ¶ 2); approximately 180 prisoners, all of whom have tested positive for COVID-
14   19, reside in Unit J with him and prisoners are not allowed to leave to isolate themselves, get
15   fresh air, or exercise (*id.* at ¶¶ 2, 3); prisoners stand in line for sick call and to receive their
16   medication without distancing themselves (*id.* at ¶ 3); the ventilation in the housing unit is poor
17   and defendant believes he is breathing in the air and respiratory droplets of other prisoners in that
18   unit (*id.*); he receives a banana and cereal with milk for breakfast, macaroni and sometimes a
19   canned vegetable for lunch, and a peanut butter sandwich and either a cookie or cake for dinner
20   (*id.* at ¶ 5); and he had yet to receive the hand sanitizer, towels, and cleaning supplies promised
21   by the BOP (*id.* at ¶ 6). Defendant argues in conclusory fashion that these conditions make it
22   impossible for him to provide self-care with respect to re-infection with COVID-19. (Doc. No.
23   56 at 24.)

24   In opposition to the motion, the government asserts that defendant Mootz's medical
25   records indicate that he suffers from essential (primary) hypertension, but that the Centers for
26   Disease Control and Prevention ("CDC") only recognizes "pulmonary hypertension" as a high-
27   risk factor for serious complications from COVID-19. (Doc. No. 58 at 8.) The government adds
28   that because defendant's BOP medical records do not indicate that his BMI is 40 or above, he

8

does not suffer from severe obesity which is recognized by the CDC as a high-risk factor with respect to serious complications from COVID-19.  (*Id.* at 9.)  Since the government filed its opposition, however, the CDC has updated its listings and now recognizes that a body mass index of 30 or higher definitively increases one's risk, and "high blood pressure (hypertension)" might increase the risk for severe illness from COVID-19.  *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last reviewed September 14, 2020).  The government also relies upon the May 21, 2020 declaration of Lawrence Cross, the Health Services Administrator overseeing Federal Correctional Complex (FCC)[4] Lompoc in contending that FCC Lompoc inmates are provided access to cleaning supplies, including their own personal bottle of disinfectant, and medical staff do daily symptom and temperature checks of every housing unit. (Doc. No. 58 at 7.)[5]

In reply, defendant argues that to the extent there is a factual dispute between the Gupta Declaration and the Cross Declaration, the court should credit defendant Mootz's description as recounted in his counsel's declaration because defendant understood that lying regarding these matters would harm his chances of being granted compassionate release.  (Doc. No. 61 at 4.) Defendant also argues that BOP has not provided him adequate medical treatment.  In this regard, defendant states that "[t]he most that BOP did to care for [him] was belatedly test him after the virus had already spread throughout the facility, take his temperature and ask him his symptoms." (*Id.* at 7) (citing Doc. No. 54 at 2).  Defendant further avers that he was not seen by a physician following his positive COVID-19 diagnosis, (*id.*), although the court notes that his BOP medical records reflect that in May of 2020 he was being screened and monitored for COVID-19 symptoms daily by FCI Lompoc medical staff.  (*See* Doc. No. 54 at 2–3.)  Lastly, defendant states

---

[4] FCC Lompoc is divided into three facilities:  FCI Lompoc; United States Penitentiary, Lompoc; and a satellite prison camp.  (Doc. No. 340-1 at ¶ 3.)

[5] This declaration addressing the COVID-19 related precautions being then taken at was FCC Lompoc was filed in the case of *United States v. Eddings*, 2:09-cr-00074-JAM at Doc. No. 340-1. The court, in that case, relied upon that declaration in denying defendant Eddings' motion for compassionate release. (Doc. No. 345 at 5.)

9

that after he tested positive for the virus, he was never re-tested to determine whether he was still positive for COVID-19. (Doc. No. 61 at 7.)

The court finds that defendant Mootz has demonstrated that he suffers from serious medical conditions. Defendant's age (66) and body mass index of over 30 put him at higher risk for suffering severe illness from COVID-19, and his high blood pressure may also increase his risk in that regard. *See Older Adults*, Centers for Disease Control and Prevention, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last reviewed September 14, 2020); *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last reviewed September 14, 2020).

Nonetheless, defendant has not shown that his ability to provide self-care is substantially diminished in light of his medical conditions and FCI Lompoc's handling of the COVID-19 pandemic.[6] *See United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3 (D. Nev. April 24, 2020) ) ("[T]he presence of COVID 19 . . . necessitates a more expansive interpretation of what self-care means" and thus the inability of individuals at high risk of becoming severely ill from COVID-19 to practice appropriate hygiene, wear a mask and maintain social distancing is an inability to provide self–care) (citation omitted). First, defendant Mootz has failed to demonstrate that he cannot provide self-care despite his serious medical conditions. For example, BOP has provided him access to treatment and medication for his high blood pressure and high cholesterol, and defendant does not explain how—despite this care—his imprisonment at FCI Lompoc diminishes his ability to provide self-care for these conditions.

---

[6] To support the assertion that it is unlikely he will receive adequate medical care at FCI Lompoc if his condition worsens, defendant Mootz has attached to his motion the complaint filed in *Torres v. Milusnic*, No. 20-cv-4450-CBM-PVC, a class action lawsuit brought against the warden of FCI Lompoc on behalf of inmates challenging the conditions at that prison which is pending before the U.S. District Court for the Central District of California. (*Id.* at 19–20; *see also* Doc. No. 49-1.) Defendant contends that this lawsuit "details several instances of prisoners not receiving adequate medical care after testing positive for COVID." (Doc. No. 56 at 20.) The relevant inquiry for purposes of resolving the motion pending before this court, however, is not whether inmates at FCI Lompoc are generally receive adequate medical care, but rather whether, specifically, defendant Mootz's medical conditions have substantially diminished his ability to provide self-care within FCI Lompoc. *See* 18 U.S.C. § 3582(c)(1)(A)(i) and (ii).

(*See id.* at 16) (listing the prescribed medications defendant Mootz takes for high blood pressure and high cholesterol"); (Doc. No. 63 at 2) (suggesting the addition of calcium channel blockers to lower his blood pressure).  Nor has defendant shown how his placement at FCI Lompoc diminishes his ability to provide self-care for his obesity.  Defendant's medical records reflect that BOP doctors have advised him to reduce his weight through a heart healthy, reduced carbohydrate diet since at least December 2019, and the presentence report prepared in his case reflected that he has consistently been approximately 50 pounds overweight.  (Doc. No. 58 at 6; *see also* Doc. Nos. 28; 53 at 1.)  The court is not persuaded that defendant cannot follow his recommended weight loss and diet plan by declining to eat certain foods allegedly provided with his prison meals, such as cookies and cake.  Defendant also does not adequately explain why he is unable to exercise in some form within the prison.  Moreover, defendant's medical records show that medical staff adequately treated him when he tested positive for COVID-19.  (*See* Doc. No. 63 at 6.)  Defendant was monitored daily for signs of any symptoms or detrimental impacts on his health.  (*See id.*)  According to the government, after showing no symptoms since testing positive, defendant Mootz met the CDC criteria for release from isolation and has since been considered recovered.[7]  (*See id.*)

      Lastly, the court is unaware of whether *current* outbreak mitigation practices at FCI Lompoc reflect those reported through the Gupta Declaration, the Cross Declaration, or neither, given that those declarations were dated several months ago.  Notably, conditions with respect to the COVID-19 outbreak at FCI Lompoc appear to have improved significantly since the time

---

[7] The undersigned does not, however, discount the possibility of reinfection from the virus.  As one district court has observed:  "Without scientific conclusions as to whether reinfection is possible or how long COVID-19 immunity lasts, [courts have] err[ed] on the side of caution to avoid potentially lethal consequences." *States v. Yellin*, Case No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *13 (S.D. Cal. June 26, 2020); ); *see also United States v. Hanson*, No. 6:13-cr-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) ("[T]here is no current scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection, as several courts have recently acknowledged."); *But see United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020) (concluding that the uncertainty surrounding the danger of re-infection with COVID-19 "cuts against compassionate release," in part because it is the defendant's burden to establish that "extraordinary and compelling" reasons for release exist.).

1  addressed in those declarations.  When defendant filed his motion on June 2, 2020, 900 of 939

2  inmates and 18 staff at FCI Lompoc had tested positive for the virus, and one inmate had died.

3  (Doc. No. 56 at 20.)  By time the government filed its opposition to defendant's motion on June

4  12, 2020, the BOP was reporting two deaths among prisoners and eight confirmed then–active

5  COVID-19 cases among prisoners or staff at FCI Lompoc.  (Doc. No. 58 at 6.)  As of September

6  25, 2020, however, the BOP reports that zero prisoners and only three staff members at that

7  prison are now confirmed as having active cases of COVID-19 cases, with no additional deaths.

8  *See* https://www.bop.gov/coronavirus/ (last reviewed September 25, 2020).  The court certainly

9  recognizes that FCI Lompoc initially failed to control the outbreak of COVID-19 at that

10  institution, as a high number of its inmates tested positive for the virus.  *See United States v.*

11  *Schweder*, No. 2:11-cr-00449-KJM, 2020 WL 5257598, at *5 (E.D. Cal. Sept. 3, 2020) ("Other

12  district courts have found USP Lompoc to be suffering a particularly bad outbreak.  Earlier this

13  year, another district court in the Ninth Circuit called FCI Lompoc 'among the worst coronavirus

14  hotspots in the nation.'") (citing *United States v. Robinson*, No. 18-cr-00597-RS-1, 2020 WL

15  1982872, at *1 (N.D. Cal. April 27, 2020)); (Doc. No. 56 at 20).  That situation is obviously an

16  extremely serious one.  But it appears that in the three and a half plus months since defendant

17  Mootz filed his motion on June 2, 2020, the active COVID-19 virus cases at FCI Lompoc have

18  decreased significantly.[8]

19      In light of all the above, the court concludes that defendant Mootz has not met his burden

20  of demonstrating extraordinary and compelling reasons for compassionate release under

21  § 3582(c)(1)(A).  Therefore, his motion will be denied.

22

---

23  [8] The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered
24  from the virus without confirming test results.  Other judges have recently expressed similar concerns regarding reporting at FCI Lompoc.  *See Schweder*, 2020 WL 5257598, at *5 ("More
25  recently, this court has noted serious concerns about the government's methods for tabulating the numbers of inmates infected versus those recovered at Lompoc in granting compassionate release
26  for a co-defendant in this case.")  Similarly, defendant reports that BOP deems inmates recovered at FCI Lompoc if they either do not show symptoms or report that they do not have symptoms.
27  (Doc. No. 56 at 21) (citing Doc. No. 49-2 at ¶ 7.)  However, there is also no evidence before the
28  court contradicting the numbers of active cases currently being reported by the BOP.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Mootz's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[9] *See Parker*, 2020 WL 2572525, at *11.

As noted above, on August 23, 2017, defendant was sentenced to 108 months in the custody of the BOP for receipt and distribution of material involving the sexual exploitation of minors. (*See* Doc. Nos. 38, 39.) Forensic examinations of the devices seized from the defendant's residence identified approximately 8,537 images of child pornography and 4 videos of child pornography, for which the defendant was held accountable in calculating his offense level, as well as 33,181 images of child erotica and 1 child erotica video. (Doc. No. 28 at 5–6.) In light of this evidence, the nature of those depictions, the age of those depicted, and with defendant's acceptance of responsibility acknowledged, it was determined that his total offense level was 34 and his lack of criminal history placed him in category I. (*Id.* at 4–9.) This resulted in an advisory sentencing guideline range calling for a term of imprisonment of 151 to 188. (*Id.* at 3, 17.) The probation officer recommended a slightly below guideline sentence of 132 months in BOP custody in light of consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). (*Id.* at 3) The undersigned varied downward to an even greater degree after considering those factors and sentenced defendant Mootz to a 108-month term of imprisonment to be followed by a 180-month term of supervised release with the mandatory penalty assessment and

---

[9]  Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

1   imposed a restitution order in the amount of $8,000.  (Doc. No. 44.)

2   The Presentence Report noted that although defendant Mootz lacked any prior criminal
history, his first commission of a serious federal crime at the age of 61 could mean that there was
an increased risk of recidivism, despite statistical evidence that the risk of recidivism for other
types of offenses usually decreases as a person ages.  (Doc. No. 28 at 19–21.)  The Presentence
Report also reflected concern for recidivism based upon the defendant's breach of the conditions
of his Pretrial Release supervision only one month after being released on supervision by
possessing a cellphone with access to the internet, resulting in his remand back into custody.  (*Id.*
at 20.)  In light of the probation officer's expressed concerns in this regard, consideration of the
risk of recidivism on the part of the defendant weighs to some degree against the granting of
compassionate release.  *See United States v. Diaz-Diaz*, No. 15-cr-02982-BAS-1, 2020 WL
5257872, at *4 (S.D. Cal. Sept. 3, 2020) (denying compassionate release and finding credence in
probation's determination at sentencing that defendant was at a high risk for recidivism).

The government argues that defendant Mootz continues to present a danger to the
community.  The government points to the decision in *United States v. Mitchell*, 2:12-cr-00401-
KJM, 2020 WL 2770070, at *3 (E.D. Cal. May 28, 2020), a case in which the court denied a
compassionate release motion and recognized the inherent dangerousness of child pornography
offenses.  (Doc. No. 58 at 10.)  In finding that the defendant in that case posed a danger to the
community, the court noted that the defendant (1) committed his crime at home, which is where
he wished to be released on home confinement; (2) had only served about one-third of his term of
imprisonment; (3) and provided no information showing he had engaged in any sort of
rehabilitation while incarcerated.  *Mitchell*, 2020 WL 2770070, at *4.

Here, if the requested relief were granted, defendant Mootz too would be released to the
same place[10] at which he committed the crime for which he was convicted and sentenced, and the

---

[10] Defendant requests that the court either reduce his sentence to time served or amend the conditions of his supervised release to require him to serve what would have been the remaining portion of his custodial term on home confinement. (Doc. No. 56 at 28.) First, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at

government persuasively argues that defendant has, through his conduct on pretrial release, already cast some doubt on his ability to comply with the court's orders. (Doc. No. 58 at 11.) Additionally, as of the date of this order, defendant Mootz has served only about 41 months of his 108-month sentence, or approximately 38 percent. *See United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 26148743, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"); *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) ("'The length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion.") (quoting *Connell*, 2020 WL 2315858, at *6).[11]

Although defendant has admittedly not completed any rehabilitative programming, he argues that this is because sex offender treatment is not offered to prisoners confined at FCI Lompoc. (Doc. No. 61 at 11–12.) Here, defendant has, appropriately, offered a proposed release plan that includes participation in an emotional support group and Sharper Future, a program in Sacramento that provides specialized treatment and counseling services to clients who are under

---

*2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" because the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See Connell*, 2020 WL 2315858, at *5, n.6 & *7. Accordingly, to do as defendant requests, the court would be required to reduce his sentence to one of time served (i.e. 41 months) and modify the conditions of supervised release to require home confinement for 67 months. The court is unwilling to do so for the reasons set forth above. The BOP knows its capabilities to effectively and appropriately care for defendant Mootz in a custodial setting. If the BOP determines that the defendant should be released to home confinement to serve his sentence under the Attorney General's expanded authority in that regard (*see* fn. 2, above) the court trusts it will do so. The issue that this court resolves is merely whether in its view, under the applicable legal standards, defendant's sentence should be reduced.

[11] The government emphasizes that the statutory mandatory minimum sentence for defendant's offense of conviction was a five-year prison term and that he has not even completed serving that much time. (Doc. No. 58 at 9–10) (citing 18 U.S.C. § 2252(a)(2)).

supervision in the Eastern District of California. (Doc. No. 55 at 4.) It is the case that some courts have granted compassionate release and included in the conditions of supervised release a specific sex offender treatment program. *See United States v. Hanson*, No. 6:13-cr-00378-AA-1, 2020 WL 3605845, at *6 (D. Or. July 2, 2020) (noting that defendant "had no plan for a sex offender treatment assessment and no treatment provider in mind" and directing defendant to participate in a specific, well-established treatment program in close proximity to defendant's home); *Mitchell*, 2020 WL 2770070, at *4 ("Absent any evidence supporting defendant's rehabilitation or a detailed release plan imposing conditions to prevent the likelihood of defendant's reoffending from his home where he requests placement, defendant has not met his burden to show releasing him to home confinement will not pose a danger to the public."). While acknowledging defendant's proposal to participate in a rehabilitation program if released, the court recognizes that even actual rehabilitation alone is not enough to warrant compassionate release. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3.

In conclusion, the court finds that a reduction of defendant's 108-month sentence effectively to one of less than three and a half years would not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

## CONCLUSION

Because defendant Mootz has failed to demonstrate that "extraordinary and compelling" reasons exist justifying his release under 18 U.S.C. § 3582(c)(1)(A) or that his release from imprisonment at this time would be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 56) is denied.

IT IS SO ORDERED.

Dated: **September 27, 2020**

UNITED STATES DISTRICT JUDGE